IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| DAN E. LONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 03-1097-T-An |
| | ) |
| THE PROCTER & GAMBLE | ) |
| MANUFACTURING COMPANY, | ) |
| a corporation, | ) |
| | ) |
| Defendant. | ) |

---

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Dan E. Long filed his action against his employer, Procter & Gamble Manufacturing Company ("P&G"), alleging that he was retaliated against because of his complaints of discrimination. The complaint asserts causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. §§ 1981, 1985 and 1986; the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.*; and state common-law conspiracy principles. Before the court is Defendant's renewed motion for summary judgment. Plaintiff has filed a response to the motion. For the reasons set forth below, Defendant's motion is DENIED.

Motions for summary judgment are governed by Fed. R. Civ. P. 56. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law,

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on _____

147

summary judgment is appropriate. Fed. R. Civ. P. 56(c). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but must go beyond the pleadings and "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 323.

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter but only to determine whether there is a genuine issue for trial. Id. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

2

In March 1984, Plaintiff, a black male, began working at J.T. Baker, Inc.[1] Defendant acquired J.T. Baker, Inc., in 1985. In 1995, Defendant sold the J.T. Baker plant to Mallinckrodt Chemical. In April 1995, Plaintiff's employment with Mallinckrodt Chemical was terminated. Plaintiff was hired by Defendant in August 1995 as a "T1."[2] Plaintiff became a T2 on July 1, 1996.

In February 1998, Plaintiff transferred to the Pringles South module D-Team in the Hot Oil Process area. T2 technicians who transferred were required to get an "in-depth" in their area in order to maintain their T2 status. To qualify for a promotion to T3, an employee needed to obtain two in-depth skills in their work area. Technicians in Plaintiff's department were required to obtain a hot oil in-depth and a processor in-depth before being promoted to T3.[3] Plaintiff obtained a hot oil in-depth but did not obtain a processor in-depth.

In February 2001, Plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleged that he was discriminated against when he was (1) denied an environmental compliance role, (2) denied a line pair leader role, and (3) transferred to Lines

---

[1] The facts are stated for the purpose of deciding this motion only.

[2] The parties dispute Plaintiff's reason for leaving Mallinckrodt Chemical, Plaintiff's high school grades and class ranking, and Plaintiff's college credentials. These facts are not relevant to the determination of this motion.

[3] Plaintiff agrees that this fact is undisputed "in theory," but argues that the policy was not carried out "in practice." Plaintiff's Resp. to Defendant's Undisputed Facts at para. 51.

5/6.

Plaintiff acknowledges that he declined the environmental compliance position when it was offered to him in 1997; however, he claims that he did not accept the position because it was offered "with reservations." Plaintiff's Resp. to Defendant's Undisputed Facts at para. 65. Plaintiff applied for the position in April 1998 and November 1998 but was not selected.

The line pair leader role was created in late 1999 or early 2000.[4] This position required two in-depths. Plaintiff had only one in-depth. Plaintiff was not given this position.

In July 2000, two white males, Chris Massey and Greg Robbins, were moved to Lines 5/6. Plaintiff was transferred to Lines 5/6 in the fall of 2000.[5] Plaintiff was transferred to Lines 11/12 in March 2001. The parties dispute whether Plaintiff was offered a leadership role on Lines 11/12.

On March 22, 2002, Plaintiff filed a supplemental charge of discrimination with the EEOC. Plaintiff alleged that Defendant retaliated against him by investigating a claim of sexual harassment and by wrongfully terminating him based on the following events.

In March and April, 2001, Defendant conducted an investigation into whether

---

[4] The parties dispute whether the position was created to provide leadership training or to remedy communication problems.

[5] Plaintiff contends that Massey and Robbins were allowed to build their leadership skills by redesigning Lines 5/6. Therefore, according to Plaintiff, his transfer to Lines 5/6 several months later did not help him advance. He also contends that he was moved from Lines 9/10 so that Defendant would not have to put him in a line pair leader role.

4

Plaintiff had sexually harassed another employee named Dora Wallace.[6] Plaintiff was told to stay away from Wallace but was not disciplined.

Plaintiff's employment was terminated on January 28, 2002, on the ground that he falsified quality control records. Plaintiff denies that he falsified the records and claims that Defendant's investigations into the allegations were a "sham." Plaintiff contends that he was fired in retaliation for having filed an EEOC charge.

On April 9, 2003, Plaintiff filed a "Complaint for Retaliation" in this court. The complaint states that the "action is brought to remedy retaliation against an employee for activity protected under Title VII...." Complaint at para. 1. The complaint further states that Plaintiff filed a charge of discrimination with the EEOC against Defendant on March 22, 2002, "complaining of the acts of retaliation alleged herein." Id. at para. 3. In the complaint, Plaintiff alleges that, after he filed an EEOC charge in February 2001, "he was subjected to constant scrutiny by his white co-workers" and was "isolated and excluded from group decisions." Id. at para.11. Defendant then "terminated plaintiff's employment, ostensibly for the falsification of documents." Id.

Plaintiff's "First Cause of Action" states that "[b]y the above acts, defendant has retaliated against plaintiff on the basis of his having complained of defendant's discrimination against plaintiff and similarly situated African American technicians in violation of Title VII, the Civil Rights Act of 1871 and Tennessee state law." Id. at para.

---

[6] Plaintiff and Ms. Wallace had a child together.

13 (emphasis added). Plaintiff's "Second Cause of Action" states that "**[b]y the above acts,** Defendant has intentionally discriminated against plaintiff in violation of Title VII, the Civil Rights Act of 1871 and Tennessee state law..." Id. at para. 16 (emphasis added).

Although both parties spend much time disputing whether Defendant discriminated against Plaintiff by allegedly failing to promote and/or train him for various leadership positions <u>prior</u> to February 2001 and whether those claims are barred by the statute of limitations, the only claim before the court is whether Defendant retaliated against Plaintiff as the result of filing an EEOC charge in February 2001. The retaliatory acts complained of by Plaintiff are that "he was subjected to constant scrutiny by his white co-workers" and "isolated and excluded from group decisions" and that his employment was terminated. All other alleged acts are relevant only to the extent that they relate to the retaliation claim.

In the absence of direct discrimination, as in the present case, the framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) is applicable to claims of retaliatory discharge.[7] <u>Prince v. Commissioner, U.S.I.N.S.</u>, 713 F. Supp. 984, 996 (E.D. Mich. 1989), citing <u>McKenna v. Weinberger</u>, 729 F.2d 783 (D.C. Cir. 1984). To establish a prima facie case of retaliation, the plaintiff must show: (1) that the employer knew that the plaintiff had engaged in a statutorily protected activity;[8] (2) that the employer

---

[7] The <u>McDonnell Douglas</u> framework applies to claims brought under the Title VII, the THRA, and § 1981. <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 582 (6th Cir. 1992); <u>Bell v. Ohio State University</u>, 351 F.3d 240 (6th Cir. 2003). Accord <u>Crawford v. Medina General Hospital</u>, 96 F.3d 830, 834 (6th Cir. 1996) (Courts routinely employ Title VII and ADEA case law interchangeably.)

[8] It is undisputed that Plaintiff engaged in a statutorily protected activity when he filed his EEOC charge.

took an adverse personnel action; and (3) that a causal connection existed between the two. Prince, 713 F. Supp. at 996. "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir.2000).

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Canitia v. Yellow Freight System, Inc., 903 F.2d 1064, 1066 (6th Cir. 1990). The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate "that the proffered reason was not the true reason for the employment decision." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).

### Increased Scrutiny, Isolation, and Exclusion from Group Decisions

Plaintiff contends that he suffered an adverse personnel action by being subjected to closer scrutiny in retaliation for having filed a charge of discrimination in February 2001, as evidenced by the following acts of Defendant: "unwarranted" notes were placed in his personnel file; he was "unjustly accused of falsifying his employment application" and misrepresenting his educational background; he was "falsely accused of harassing" Dora Wallace, a co-worker; and he was "spied" on by his supervisor. Plaintiff's Response at pp. 36-37. Plaintiff also contends that he was isolated and excluded from group decisions.

An "adverse employment action," also referred to by the Supreme Court as a "tangible employment action," is "a significant change in employment status, such as hiring,

7

firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). For example, a performance evaluation that is lower than an employee feels is warranted is not an adverse employment action sufficient to state a claim of discrimination. See Primes v. Reno, 190 F.3d 765, 767 (6th Cir.1999); Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir.1997).

Here, the only adverse consequence that Plaintiff alleges arose from the "increased scrutiny" and isolation and exclusion was his ultimate termination. Therefore, the court will consider these alleged acts as part of that "adverse employment action," rather than as separate actions.

### Termination

Defendant acknowledges that Plaintiff suffered an adverse personnel action when he was terminated. Defendant argues, however, that Plaintiff cannot show a causal connection between the two. That is, Plaintiff cannot show that he was terminated because he filed an EEOC charge. To establish a causal connection, Plaintiff relies on the proximity between his filing the EEOC charge and his termination.

The requisite causal connection may be shown by the close proximity in time between the protected activity and the allegedly retaliatory action. See Burrus v.United Telephone Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982) (citing Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2nd Cir. 1980) and Womack v. Munson, 619 F.2d 1292, 1296 (8th

8

Cir. 1980), *cert. denied*, 450 U.S. 979 (1981)) (A causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action). See also Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir.1999) (A causal connection may be shown by direct evidence or by knowledge of the complaints on the part of the employer coupled with a closeness in time sufficient to create an inference of causation.)

Temporal proximity alone, however, in the absence of other evidence, is generally not sufficient to support a finding of causal connection. See Nguyen v. City of Cleveland, 229 F.3d 559 (6th Cir. 2000). However, temporal proximity may establish a prima facie case if it is "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). See also Hafford v. Seidner, 183 F.3d 506 (6th Cir. 1999) (absent additional evidence, two to five months insufficient to create an issue of causation); Cooper v. City of North Olmsted, 795 F.2d 1265 (6th Cir. 1986) (four months insufficient to support an inference of retaliation).

The relevant dates in this case are February 2001 and January 2002 - eleven months apart. "Absent additional evidence" this time period is "insufficient to create an issue of causation." However, the other instances of retaliation alleged by Plaintiff, though insufficient to constitute adverse employment actions, can be combined with the temporal proximity to create an issue of causation. See Nguyen, 229 F.3d at 566 (Evidence of retaliatory conduct in addition to temporal proximity may establish a causal connection.)

Subjecting an employee to excessive scrutiny and "more frequent disciplinary

9

writeups ... for trivial matters" than other employees may be evidence of retaliatory conduct. Moore v. KUKA Welding Sys., 171 F.3d 1073, 1080 (6th Cir.1999); see also Harrison v. Metropolitan Government, 80 F.3d 1107, 1119 (6th Cir.1996) ("More important, however, is the fact that study of the record in this case reveals an atmosphere in which the plaintiff's activities were scrutinized more carefully than those of comparably situated employees ...") Accord Parries v. Makino, Inc.,2005 WL 2175920 (6th Cir.) ("We recognize that a jury could find that the close supervision Parries received after his earlier discharge was simply the result of his history of disciplinary problems leading up to the 1999 dismissal. On the other hand, he was reinstated following post-discharge arbitration, and a jury might find that the ensuing level of scrutiny leading up to the dismissal in 2001 was unjustified in terms of the relatively minor nature of the alleged misconduct it revealed.")

In the present case, there is a disputed issue of fact as to whether Plaintiff was scrutinized more highly than his co-workers. For example, Defendant contends that Plaintiff received his college degree from a "diploma mill" and, therefore, falsely stated on his employment application that he had completed four years of college.[9] Defendant's Statement of Facts at pp. 6, 8. The trier of fact could find that Defendant's inquiry into Plaintiff's educational background was retaliatory, especially in light of the fact that Plaintiff's position did not require a college degree. Plaintiff's Response to Statement of Facts at p. 10.

---

[9] It is not relevant to the issues presented in this case whether a degree from Chadwick University qualifies as a college degree.

Defendant also asserts that Plaintiff lied on his employment application by stating that he had graduated from high school. Defendant's Statement of Facts at p. 8. Plaintiff's application shows that he both indicated "12" for number of grades completed and also marked the "G.E.D." box. Plaintiff's Response to Statement of Facts at p. 13. The trier of fact could find that Defendant's overly-technical characterization of these markings as a lie is evidence of retaliation.

Plaintiff contends that Defendant's investigation of his alleged sexual harassment of Dora Barnes was retaliatory. The court need not determine whether Plaintiff actually sexually harassed Ms. Barnes; instead, the issue is whether Defendant conducted an investigation into a knowingly false accusation in order to retaliate against Plaintiff.

Although Plaintiff denies that he harassed Ms. Barnes, she states in her deposition that she reported to Laura Kingsley in Defendant's Human Resources Department that Plaintiff was stalking her and asked for help to prevent this. Barnes Depo. at pp. 38-39. Ms. Barnes told Ms. Kingsley that she was afraid of Plaintiff and "would like for him to leave [her] alone." Id. at p. 48. Plaintiff has submitted no evidence countervailing evidence on this issue. Once Ms. Barnes made the complaint, Defendant was under a legal obligation to institute an investigation. Consequently, the court finds that it is undisputed that Defendant's investigation of Ms. Barnes' report that Plaintiff was stalking her was not retaliatory.

Because Plaintiff has established a prima facie case, the burden shifts to Defendant

11

to "articulate a legitimate, non-discriminatory reason for the adverse action." Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 542 (6th Cir.2003). Defendant's stated reason for terminating Plaintiff is the falsification of company records, which is a legitimate, non-discriminatory reason. The burden, thus, shifts back to Plaintiff, requiring him to demonstrate that the proffered reason was a mere pretext for a retaliatory animus. Id. "[C]aution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation." Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 564 (6th Cir. 2004).

A plaintiff may demonstrate pretext by showing: that the proffered reasons have no basis in fact, i.e., did not occur; that other employees, particularly employees outside the protected class, were not subject to adverse action, even though they engaged in similar behavior; or that the strength of the circumstantial evidence is so overwhelming that a discriminatory motive may be inferred. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1082 (6th Cir. 1994).

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.

Id. at 1084 (internal quotations and emphasis omitted.) The evidence showing the causal connection requirement and that the proffered reason for termination is pretextual may overlap. Cantrell v. Nissan North America Inc., 2005 WL 1869724 (6th Cir.) (Citing Nguyen

12

v. City of Cleveland, 229 F.3d 559 (6th Cir.2000) ("evidence that defendant treated the plaintiff differently from similarly situated employees ... is relevant to causation").

To be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.1992). Although the comparison need not involve identical misconduct, the misconduct must be of comparable seriousness. See Hollins v. Atl. Co., Inc., 188 F.3d 652, 659 (6th Cir.1999).

The events leading to Plaintiff's termination are as follows. On January 20, 2002, it was Plaintiff's responsibility, as a hot oil technician, to verify that salt was flowing properly onto the chips. The checks were to be performed every hour, in fifteen minute intervals, i.e., at :00, :15, :30, :45, during Plaintiff's twelve-hour shift. Although Defendant expected its employees to fill out log sheets timely and accurately, it was an acceptable practice to sign the log five minutes early or five minutes late. Horne Depo. at p. 25; Beall Depo. at p. 31. Some employees signed off as much as fifteen minutes early or ten minutes late without being disciplined. Kingsley Depo. at pp. 48-50. There were no written policies or guidelines for signing the log. Beall Depo. at pp. 31-32.

According to Plaintiff's affidavit, he took a lunch break from approximately 2:00 p.m. until 2:50 p.m. When he returned to the floor, he checked the salt flow and signed the

log. There was no one else present on the floor. He then spent approximately fifteen minutes checking an excessive amount of steam coming from Line 11. At approximately 3:15 p.m., he returned to the salter room, checked the salt flow, and signed the log. No one else was present in the salter room, although Larry Pruitt and Jerry Williams were at "the wedge," which was about twenty feet beyond the salter. Plaintiff then went to the south side of the salter and checked the belt wash tank gauge. Between 3:15 and 3:20 p.m., Plaintiff was on the north side of Line 11 washing off a filmy build-up at the pick-off end of the fryer. After this, Plaintiff talked to Gary Thompson, another technician, for about ten to fifteen minutes. Pruitt came out of the salter room during this time and briefly spoke to Plaintiff and Thompson. Plaintiff left Thompson and returned to check the salt flow and sign the log at 3:30 p.m. At 3:40 p.m., Plaintiff again checked the salt flow and signed the log in the 3:45 p.m. time spot, so that he could take a bathroom break. When Plaintiff returned in approximately eight to ten minutes, Jim Horne, Plaintiff's team leader, was sitting on the salter. Plaintiff states that Horne told him that he had been there for thirty minutes.

According to Defendant, Horne reported that at approximately 3:00 p.m., he went to the manufacturing floor, including the salter room, and did not notice any technicians. Horne looked at the salter log sometime between 3:15 and 3:20 p.m. and saw that the four time slots of 3:00, 3:15, 3:30, and 3:45, had all been initialed by Plaintiff. Horne left the room and asked Pruitt if he had seen anyone in the salter room recently. Pruitt said that he

14

had not. Horne returned to the salter room until approximately 3:40 p.m., at which time he left to assist another technician. On his return, he again asked Pruitt if he had seen a hot oil technician, and Pruitt told him no. When Plaintiff returned at approximately 4:00 p.m., Horne did not ask Plaintiff if he had signed the log early or if he had falsified the log entries. There were no problems with the salt flow while Plaintiff was monitoring it.

Horne reported his accusation to team manager Ann Marie Beall, who interviewed Plaintiff about the events on January 22, 2002. Horne was present at the interview. Beall suspended Plaintiff with pay and sent him home pending the outcome of the investigation.

As part of her investigation, Beall talked to Gary Thompson who confirmed that he had talked to Plaintiff at approximately 3:15 - 3:20 p.m. on the manufacturing floor. Beall Depo. at p. 42. According to Kingsley, Plaintiff identified Jeff Fisher as someone who could support his version of the events of January 20, Kingsley Depo. at p. 77, while Beall testified that Plaintiff did not mention Fisher to her. Beall Depo. at p. 46. Based on her investigation, Beall concluded that Plaintiff had falsified the log and should be terminated.

After Plaintiff complained that he was being retaliated against, Kingsley initiated another investigation. She reached the same conclusion that Beall had reached. A third investigation was conducted by Jim Fryer, one of Defendant's human resources managers from Cincinnati. He also reached the same conclusion.

On the date that he was terminated, Plaintiff was at step one of Defendant's disciplinary process which meant that he had received no prior disciplinary actions.

15

Kingsley Depo. at p. 112.

Construing the evidence in the light most favorable to Plaintiff as the non-movant, the trier of fact could find that the reason given for Plaintiff's termination was a pretext for retaliation and that Defendant did not conduct a good faith investigation into the accusations against Plaintiff based on all or some of the following[10]:

1. Although the alleged falsification of the log sheets was Plaintiff's first instance of work related misconduct, he was terminated from his employment rather than receiving a lesser discipline.

2. The events on the day in question occurred during a narrow window of time, allowing for a greater possibility of error in pinpointing exact times. Horne testified that, between 3:15 and 3:20 p.m., he noticed that the log sheet had already been signed by Plaintiff for 3:15, 3:30, and 3:45 p.m.; thus, even accepting Horne's testimony as true, at most, Plaintiff would have signed the log for 3:30 fifteen minutes early and for 3:45 thirty minutes early. The time span could have been less because the clocks on the manufacturing floor were not always accurate, see Horne Depo. at p. 58 ("[N]o two of them would have the exact same time of them."), and technicians were not allowed to wear watches on the manufacturing floor. Fisher Affidavit at p. 3.

3. It was an accepted practice or custom to sign the log from five to fifteen minutes early or late.

---

[10] This list is not exhaustive.

4. Horne did not ask Plaintiff about his actions on the date in question but, instead, reported to Beall that Plaintiff had falsified the company records.

5. Although falsification of company records was a terminable offense, Defendant did not have a clear policy as to whether signing the log early or late constituted falsification of company records. Moreover, there is a dispute as to whether Plaintiff merely signed the log early after making his checks or signed the log without making the checks.

6. The three investigations into the accusation against Plaintiff all rested on Horne's version of the events.

7. Horne, who made the accusation against Plaintiff, and Beall, who led the investigation, were listed in Plaintiff's initial EEOC charge as discriminating against him.

In summary, Plaintiff has established a prima facie case of retaliation and has pointed to evidence showing that there is a disputed issue as to whether Defendant's stated reason for terminating him was pretextual. Consequently, Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

_James D. Todd_
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_5 October 2005_
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 147 in case 1:03-CV-01097 was distributed by fax, mail, or direct printing on October 7, 2005 to the parties listed.

---

R. Lawrence Ashe
ASHE & RAFUSE, LLP
1355 Peachtree St., NE
Ste. 500
Atlanta, GA 30309--323

Stephen D. Wakefield
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Dan E. Long
188 Skyridge Dr.
Jackson, TN 38305

Larry Montgomery
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Venita Marie Martin
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Adam F. Glankler
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Cynthia G. Burnside
ASHE & RAFUSE, LLP
1355 Peachtree St., NE
Ste. 500
Atlanta, GA 30309--323

James J. Swartz  
ASHE RAFUSE & HILL LLP  
1355 Peachtree St., N.E.  
Ste. 500  
Atlanta, GA 30309--323

Honorable James Todd  
US DISTRICT COURT